Thank you. May it please the court. Good morning. My name is Shilpi Agarwal. I'm from the Federal Public Defender's Office, and I represent Mr. Evans in this matter. I'd like to reserve two minutes for rebuttal with the court's permission. Please do. Keep an eye on the clock. We'll try to help you, okay? Okay. Thank you. The district court in this case procedurally erred in applying the guidelines for aggravated assault to Mr. Evans' case, and thereby enhancing his offense level by five points. As the court is aware, Mr. Evans was convicted in the underlying case for being a felon in possession of a firearm. The district court in this case nonetheless applied the guidelines for aggravated assault. And the issue is whether, when Mr. Evans discharged his weapon in the events that led to his arrest, he was exercising his right to self-defense, and therefore could not have committed the offense of assault. So the evidence only has to be by a preponderance, right? The evidence has to be by a preponderance, but importantly, it's the government's burden to disprove self-defense by a preponderance. So we looked at the video, and the video shows that he jumps out of the car with the gun, and somebody is running pretty quickly away from him, and he shoots the person in the back. So why isn't it reasonable for the district court to determine by a preponderance, regardless of what the government says, that that was not self-defense? For a couple of reasons, Your Honor. The first is that we actually believe that when you look at the video very closely, it is not the case that Mr. Evans discharges his weapon at someone who is in the process of running away. A close review of the video shows that Mr. Evans has been shot five times. He is emerging from the car and raising his weapon as the person that he shoots at. We call him the accomplice in our briefs. As that person remains on the scene, is looking towards Mr. Evans and, in fact, is approaching closer to him behind one of the cars that was in the area. Mr. Evans then emerges from the car and starts to raise his weapon, and it's in reaction to that that the accomplice, the person at whom Mr. Evans shoots, turns around and starts to run. So we believe that the court's finding that Mr. Evans was sort of shooting at someone who was in the process of fleeing the scene was actually clear error. Let me just interrupt for one second. My colleagues raised the question of the preponderance of the evidence. I agree with you that the statute in California puts the burden on the government. That has some consequences, but as I look at the record, it's not clear to me. Were Judge White assigned the burden of proof? It seemed like he didn't assign it to the defendant. It also seems like it wasn't clear that he assigned it to the government. He kind of left it in equipoise. What does that do to your case, if anything? I agree with Your Honor that it does not appear that the district court properly placed the burden with the government as it should. And the significance of that is that our position is that the undisputed facts that are portrayed in the video establish that Mr. Evans was exercising self-defense. Even if this Court disagrees, I think what is clear from both sides' briefing is there are certainly things that are left open by the video, questions that are not answered, or even certain parts of the video that are left open to interpretation. Because the burden lies with the government, those questions had to be answered in our favor. And if they didn't – if the government failed to proffer any evidence to illuminate some of those questions, then we deserved the benefit of the Court's ruling because it was their burden to disprove self-defense. So what in the record is problematic because of the misallocation, if you will, of the burden of proof? I'm sorry. So Your Honor is asking what in the record is problematic, meaning what are the – what things are sort of – if I could ask a clarifying question. Is Your Honor asking what things sort of could have been clarified with further evidence? You're saying they could have been interpreted one way or another, and therefore they have to be interpreted in your favor. What are the things that you're pointing to? So under California law, the exercise of self-defense depends on what a reasonable person in the defendant's situation would have believed knowing what the defendant knew and in the situation the defendant was in. There are a lot of things about what the defendant knew that we're just not sure of based on the video. The video is taken from the perspective of the street. Mr. Evans is in a car, sort of a double-parked car. What his state was, sort of what level of trauma he'd experienced as he was being shot, that's one thing that is sort of left unclear by the video. The person was running away pretty fast and was halfway down the block when your client shot at his back. There's no suggestion in the video that the person turned around and raised a gun or turned around in any threatening way. So it's – I'm struggling with how shooting somebody who's running pretty fast away from you and is halfway down the block is not that there's any ambiguity about whether that's self-defense or not. And with due respect, we actually disagree with the notion that the person at whom Mr. Evans shot was down the block at the point at which he shot. Again, I think that the video actually shows that he was actually very much still in the vicinity of the car and looking towards Mr. Evans when Mr. Evans made the decision to emerge at the car. The second thing that I will point out is that the man at whom Mr. Evans shot had previously had come approach the car and engaged in a conversation with Mr. Evans. And does that matter for self-defense purposes? I think it's – He was – his back was turned and he was running away at the point when the gun went off. I think it is significant because we don't know what words were exchanged between the men. If we're looking at the perspective of Mr. Evans at the time that he made the decision to shoot towards this individual, if those men had exchanged words that suggest – And what would the words have been that would have made a difference? For example, if the accomplice had said to Mr. Evans, I and my friend who's standing at the curb who ultimately did shoot at Mr. Evans, we're going to make sure that you – that we shoot you dead. And that would be self-defense if the person said that and then ran away as fast as he could? I think that it would be significant because, again, the self-defense under California law looks at whether a reasonable person, knowing what Mr. Evans knew, would have felt that he was still in imminent danger. Does – I understand your point. If you're looking at a situation in isolation, you have an individual, no prior events. But here you have a felon in possession in a residential neighborhood. A woman is just coming out of her house. It's like 6 o'clock in the evening, and he's there with a loaded firearm and a bunch of pills in this neighborhood, and he turns around and starts firing. Does that have – I get your point. I understand that the video doesn't show the whole thing, but Judge White seemed to be – I'm not sure this makes a difference if we send it back to him. He seemed to be highly incensed that your client was back before him on this felon in possession situation. Does the California self-defense statute really make a difference in this case? I don't disagree with Your Honor's point that Judge White, if the court were to remand it, I can't say that Judge White would necessarily hand down a different sentence. That being said, it is still incumbent upon the district court to arrive at the correct guidelines calculation. Do you want to save any of your time? Yes. I would like to reserve two minutes. I can finish answering the court's question, or I can have a seat. I do think it makes a difference because if Mr. Evans was validly exercising self-defense, as we believe that he was at the point at which he discharged the firearm, a different guidelines calculation would apply. We're not arguing about whether he's guilty of possessing the firearm. The issue is whether he committed assault and was thereby subject to the enhanced guidelines. We'll let you have a full two minutes when you come back, okay? Thank you, Your Honor. We'll answer any questions. We'll hear from the government. Good morning, Your Honor. Susan Gray on behalf of the United States. The government presented sufficient evidence to negate Mr. Evans' claims of self-defense. The district court did not clearly err when it found such evidence demonstrated that he was no longer in imminent danger when he fired at the back of a fleeing suspect. And thus the necessity or the reasonable grounds necessary for the use of force had ceased. Do you think that the district court properly allocated the burden of proof under California law? Your Honor, we didn't dispute that we had the burden of negating that. And the reason we didn't is because we believe we prevail under the preponderance of the evidence in terms of whether he had the affirmative defense or not. I do think he did, Your Honor, for a couple of reasons. And that is because at excerpt of record 31 and 32, the Court first said normally to speaking to defense counsel, normally you defendant would have the affirmative burden of proving a self-defense. But that's not the situation here. The Court recognized that he wasn't in a trial situation where the burden, the government would put on its proof, the defense might raise a claim of self-defense, and then it would swing back to the government. As he said, I'm all in. As Your Honor said, he was looking at the total. Judge Smith said the Court was looking at the totality of the evidence here. And what he had was a situation where he accepted the defendant's evidence in the light most favorable to the defendant, which would certainly suggest the government was required to carry its burden. But I would point out that I think at this point the parties could disagree, perhaps could disagree about the burden, they could disagree about the facts, but that's not why we're here. At this point, the Court has looked at that videotape multiple times, and the only issue is whether the district court's factual findings after reviewing that tape were clearly erroneous. And under the deferential standard review for clear air standard review, even if there are two possible views of the evidence, the fact finder's choice between them is not clearly erroneous. Can I switch our attention for a moment to some of the other aspects of the Court's ruling? I'm specifically focusing on the conditions of supervised release. I'm sure you're not surprised. There are three that I'm particularly concerned about. One has to do as a requirement to support his defendants and meet other family obligations. Isn't that unconstitutionally vague? No, Your Honor. We don't believe that it is. These standard conditions are presumed to be reasonable. And I believe that the Morgan case, although, which I cited in my 28J letter, and I want to make clear, we recognize it as an unpublished case. You know about the Seventh Circuit, Capas? Yes, Your Honor. And I think that there's a distinction here between Capas on these three standard conditions. In Capas, as I understand it, was the Court was complaining that the defendant was not sort of wholesale handing out standard supervised release conditions. It's important to use these in context. Judge White had been dealing with this defendant for 8 years. And he'd been trying, as required by statute, to craft sentences that would assist him in rehabilitation. And I understand that. I could sense Judge White's frustration. But even the Sentencing Commission changed its wording on this standard condition because it apparently recognized that what the Seventh Circuit said was a problem. So however upset Judge White may be with Mr. Evans, the fact is that, you know, family responsibilities in this sense is pretty vague. You have the same kind of an issue with work regularly at a lawful occupation unless excused by the probation officer and so on. What if he can't get a job? He's a convicted felon. What does regularly mean? Again, that's the Paulin case on the issue of notifying third parties of risks that may be occasioned by his criminal record. Anybody that's a convicted felon, particularly a person of color, is going to have difficulty maybe. Is that unconstitutionally vague? Thompson says it is. So basically I've got three, a minimum of three of these conditions that at least to my mind are in part unconstitutionally vague. The Seventh Circuit says all of them are unconstitutional. The Sentencing Commission, I believe in all of these, has changed its wording. What are we to do with that? And to be more specific on that, why does the government care if the case went back to Judge White for an imposition of those sentencing conditions, as the Sentencing Commission has now said, or the proper wording of the sentencing conditions? Well, Your Honor, I don't think that caps or the fact that the Sentencing Commission subsequently changed those invalidates the fact that at the time they were imposed, they were legal under this Circuit's precedence, so that even if this Court finds that it was error, it wasn't plain error, and they were presumed reasonable. They were simple. It's plain error, but the last prong, of course, deals with fundamental fairness. If you can't understand what the obligation is, how can that be fair? Well, in this particular instance, I think they're absolutely clear to Mr. Evans, because for the last eight years he's operated under them. And I want to point out to the Court, as I'm sure the Court is aware, these conditions were imposed in 2008, no objection. They were reimposed during two separate supervisory revocation hearings. And here's why we know that he understands these, because when he's in sentencing on this, the underlying offense, he uses the fact that he's involved with his children. He uses the fact that I've had employment as a mitigation factor. Now, the government's position is if you are, these are clear, these factors are clear enough that you can argue to the Court on your own, not just defense counsel, that I – look, I'm meeting my obligations to support my family, too. I want to be part of their lives, and I've been getting work. I respect that. But what I'm struggling with is as a Court, we have at least three, possibly four, in terms of the gang issue, conditions that whatever they may have been in the past are certainly now in question. The Sentencing Commission has clearly viewed them as being vague because they've changed the wording. Are you suggesting, is the government suggesting, that we should just say, no harm, no foul, we're just going to let this be? Or do you agree that either the government has to stipulate or that we need to say, for the Ninth Circuit's purposes, it's also vague? No, because I think the Court has – I think the Court answered those questions in Morgan and found that these conditions weren't vague and that they also were reasonably related to the goals of supervised release. So we have a circuit split, then. Yes, Your Honor. If the Court were to rule in that way, you would – there would be a circuit split, because Morgan just recently addressed these – virtually the identical situation where they were imposed, they were legal when imposed. And I believe, if I'm not confusing the Farley case, that there was no objection as well. So – Farley was unpublished. I thought you said Morgan was unpublished as well. Both are unpublished, I believe, Your Honor. So we wouldn't have a split. I mean, these unpublished opinions are non-precedential. When I looked at Capas, it doesn't appear to have the – the Seventh Circuit doesn't appear to have the Ninth Circuit principle that we read mens rea requirement into all of the standard conditions. How does that affect our analysis? Your Honor, I think it makes a big difference. And that is because in any violation, the court would have – the government would have to prove that it was a knowing violation. So I think Judge Smith's concern about – he's not – he wouldn't be able to – he wouldn't know what he was required of him. The government would have to – there would have to be a Form 12. The government would have to come in, put on his evidence, and show that he violated that specific provision.  I don't have any evidence on that, Your Honor, unless I'm in the last minute available to me. But if there are no questions on that, I won't. I don't. But what is the evidence in the record that Evans was a member of the Down Below gang or any gang? Your Honor, he – the government doesn't have to show that he was a member of a gang. It's sufficient for this clause to be reasonable and also because the court –  I'm sorry, Your Honor. Let me answer your question. I apologize. The evidence in the PSR, I believe it's at page 4, is that he had been identified by the San Francisco Police Department as an affiliate of the Down Below or Up the Hill gang. And then his own attorney admitted at – at sentencing that he was associated with them. He grew up with the area. He – and people in the area believed he was a member of the gang or that – because and I believe that's at ER 31 or 32. I may be wrong on the site. So the court, as in Watson, where the court imposed a geographical condition, sought to prevent his association or his involvement not only with known gangs but any gang. And in fact, there's a reason. I think this – the underlying offense demonstrates the need for this condition because as his attorney said, people when he went down into another – to the And that's a quote from the record. Then bad things happened. And so what the court was doing with this particular condition is the same thing that the court tried to do in Watson. And that was, as the court said in Watson, if you go back to these haunts, if you continue your association, whether you're in a member of a gang or you're just associating with them, you're right back into that lifestyle. If the government just shows that someone grew up in an area where there's a gang, it's sufficient to meet the government's burden to have this stay away from gang condition imposed? Your Honor. Just showing that someone grew up in the area around a gang? No, Your Honor. I think we have far more than that here. We have the PSR, but we also have his own admission, his attorney's admission, that he was viewed as, you know, people believed he was in a gang because he associated with them. But if you take that, it's also true that they said that he wasn't a member of the gang. Exactly, Your Honor. But – So are you picking and choosing believing something that was said but not believing other things that were said? I think they dispute that. But the government, certainly the San Francisco Police Department, believes that he's an affiliate. The evidence would certainly suggest that he continued to associate with – in the gang area. So I want to just – I see I'm over my time, and I just want to say, suggest to the Court that this was a, if anything, most important condition that Court imposed because it was aimed at preventing his future, you know, involvement in exactly the type of situation he found. But I gather the government doesn't dispute the fact that there are criminal penalty consequences for violation of these supervised release conditions. I mean, if he breaks those, he's going to go back to jail probably and have more penalty imposed. And under our system, someone has to know that what he or she is doing is wrong in order to be criminally charged, right? Correct, Your Honor. But Farley, under this circuit's precedence, the government would have to prove that it was a knowing violation, that he knew it was a gang member, he knew he wasn't supposed to be associating with them. And so it would be our burden to prove that. Well, there's a lot we could talk about, but I'm afraid today we're going to have to call it a day. So we'll hear from your opponent in rebuttal. Thank you. Thank you, Your Honor. Let me just ask a question to follow up on earlier questions. You're not suggesting that there should be a remand to expand the record, are you? No, Your Honor. There wouldn't be any change in the evidence. Correct. So how would a change in the district court's allocation of the burden of proof lead to a different result here? Your Honor, it would — a change in the allocation of proof, we believe, would lead to a different guidelines calculation. The five-point enhancement for aggravated assault would no longer apply. But why? You're just giving me the conclusion. Why? What is it about the evidence that would lead to a different conclusion? Because we believe that if a burden of proof was properly imposed on the government, that the necessary conclusion would be that the government had failed to disprove that Mr. Evans was exercising self-defense. What if Judge White says, well, I may not have said it, but I understood that the government did mine, I got what they said, and this is my ruling, and it's exactly the same? Your Honor, I can't dispute that that may be part of what Judge White says on remand. However, he certainly on this record didn't articulate that he was placing the burden on the government as he should. And I would — Does he have an obligation to do that, to articulate that the burden of proof is on the government in the self-defense issue? I think he has an obligation to demonstrate either through an explicit statement or something about the way that he applies the law to the evidence that he's properly placing the burden. And that's what I don't think happened here, both through any explicit articulation but also through his reasoning. And I would point the Court to when Judge White in the record announces his ruling, he notes that part of what he — the basis for his ruling is his finding that Mr. White was driving his car and driven away earlier than he had. And again, under California law, the way that self-defense applies in California law, a defendant does not have a duty to retreat. And here again, I believe that if the burden was properly placed, Judge White could not find that the government had met their burden in this case. We know that you, like your opponent, would have lots more to say if we had additional time, but we thank you both for your argument. Thank you, Your Honor. The case is submitted.
judges: M. Smith, Ikuta, Bates